Hart,, Judge.
 

 The justice of the Complainant’s claim cannot be for a moment doubted, but the remedy b.y which it is to be asserted, is matter of more difficulty. This arises from the circumstance, that the-lands out of which her claim is to he satisfied, arc situated without the limits of the State, and most of those persons concerned in in tere st are non-residents.
 

 Nothing can be hazarded in saying, that in many cases a Court of Equity may proceed against
 
 the person,
 
 although the lands which may be the subject of controversy are not within the jurisdiction of the Court j as where a Defendant has contracted to convey lands, he may he compelled to do so, by executing a deed : — where he is a trustee, he may be compelled to execute the trust, although tiie trust relates to lands without the limits of the State. The Court proceeds against him personally, but will make uo decree to bind the title of the land.
 

 It is equally clear, that where the land lies within the jurisdiction of the Court, it may become the subject matter of a decree j although the person in whom the legal title is, is a non-resident, they may proceed
 
 in
 
 rein, as in the case before put. they may proceed
 
 in personam.
 
 But the difficulty here is, that the lands, and the persons who have the legal title to them, are in the State of Tennessee. In every independent government, the right to the soil is vested in the sovereign power ; and it belongs to that power to grant titles to lands, and regulate the transfer of titles from one individual to another, in any
 
 *377
 
 way it may think proper ; and to declare that all conveyances not conformable to such regulations, are null and void. Hence it follows, that all laws, judgments, and decrees, made in any other government, relative to such lands, have no binding force.
 

 I think it will be admitted, that a Court of Equity ought not knowingly to do a vain
 
 thing;
 
 make a decree which it cannot enforce. We cannot, therefore, make a decree to bind the land, because it is not within our jurisdiction. Suppose we direct that Thomas Blount, one of the executors, should sell the land, either upon the ground that he may sell
 
 xirtute offiái,
 
 or that the power to sell lias devolved upon him by stat. 21 Hen. 8, in consequence of the refusal to sell of the other executors,, which statute is in force in North-Carolina. If a purchaser from him should bring an ejectment to recover the lands so purchased, as the State of Tennessee has a right by law to regulate and lay down the mode by which the titles to land in that State shall be acquired, would it not be competent for her Courts to judge whether Thomas Blount, as executor and
 
 eo nomine,
 
 could sell the lands or not ? Whether, the other executory having refused to sell, he could sell by virtue of any statute, or act of their Legislature, authorising a sale in such cases, as the statute of the 21 Hen. 8 does ? If their Courts should be of opinion, in either case, against the validity of the sale, the purchaser could not recover. If the lands were in this State, a Court of Equity here would have it in its power to protect a purchase made under its own decree.
 

 Again' — Suppose by the laws of Tennessee,
 
 three
 
 witnesses were necessary to a will of lands, and only two should be necessary in North-Carolina, (as is the case,) and lands were directed to be sold by decree of this Court, which lay in Tennessee,* and suppose that the executor clearly had a right to sell by the words of the will, will it be for a moment contended that a sale of lands under such authority would be valid ? Our law
 
 *378
 
 says, that a last will found among the valuable papers and effects of a deceased person, or lodged in the hands of any person for safe keeping, if it be in the hand writ-jng. yje (Jeceaged^ proved by the requisite number of witnesses to be so, shall be good and valid,: but suppose there is no such law in Tennessee, would a devise in such will here, be valid there ? or a sale of lands in Tennessee, by an executor clothed with authority for that purpose, be valid ? If we direct a sale to be made by Thomas Blount, whether such sale would be good or not, would depend upon the laws of Tennessee. No decree made by us, then, would, or could be enforced, unless it should be sanctioned by the laws and by the Courts of Tennessee. It might be enforced, not because we made it, but because they approved of it — It would derive no authority from us, and therefore, I think we would be doing a vain thing to make any decree respecting tire sale of the lands. I think the laws of Tennessee must be consulted, in order to raise money out of those lands, as directed by the will, and perhaps they can be consulted in no better way, than by. applying to'the Courts of that State. 'But it has been argued that all necessary parties are before the Court, because publication has been made as to non-residents, and that is an adequate substitute for the service of subpoena. ’Tis true that the law prescribes that mode of giving notice, (where actual notice cannot be given,) and no decree can be made without observing it: but w hen the property lies out of the State, relative to which a bill in Equity is brought, and the Defendant is not actually before the Court, but publication has been made only, how is a decree to be enforced ? Not
 
 in rem,
 
 because the property is not within the jurisdiction of the Court, nor
 
 inmerso-mm,
 
 because process of attachment, or of any other sort, cannot reach the person of the Defendant, so as to compel a compliance with the decree. There surely can be nothing in this argument.
 

 No decree, therefore, ought to be made against Tilo-mas H. Blount, to sell the lands in Tennessee.